Okay, the next case is number 2012-13-18, ASPEX EYEWEAR v. ZENNI OPTICAL. Mr. Reuben. Yes, Your Honor. Please report. Good morning, Your Honors. This Court's 2008 decision in the Altair case does not collaterally to stop ASPEX from asserting the 811-896 patents against Zenni. In the Altair case, the Court decided that Altair did not infringe the 811-896 patents based on the construction of one term, retaining mechanisms. This Court found that that term means rims, lens rims, and that because some of Altair's auxiliary frames did not have lens rims, there was no infringement. Zenni wants to claim the benefit of that decision to say, well, our auxiliary frames don't have lens rims, so you're collaterally to stop from asserting that patent against us. That's not the case. There are key claim construction issues that were not actually litigated in the Altair case that apply here that show that even with this Court's interpretation of retaining mechanisms to include rims, Zenni can still infringe the patents. Well, is your theory then that you can infringe it with these sunglasses because you're arguing in this case, which you didn't argue in the first case, that they're under the second frame and not under the first frame? Is that your theory or new theory in this case? My theory in this case, Your Honor, yes, with an explanation. My theory in this case is that if we look at the claims, there are claims that call for a primary frame and an auxiliary frame. The claims say that the primary frame has retaining mechanisms. Nobody is fighting about the fact that the primary frame is the eyeglasses. The claims also say there's an auxiliary frame, but it doesn't have that requirement about retaining mechanisms. But in the first case, we concluded that these sunglasses, whether they're primary, first, second, or auxiliary, the limitation of requiring that they have a retaining mechanism does apply to these add-on sunglasses. That's why we found no infringement. Correct, and you did it based on what was actually litigated. Well, here you've got the same deal. You've got add-on sunglasses. If the theory you're arguing here had been espoused and prevailed in the first case, the result would have been completely different, right? It certainly would have been different. However, the actually... So, here you've got the same product. Implicitly or explicitly, it seems to me that by deciding the first case, this court already decided that the retaining mechanism limitation applies to sunglasses. If not, it could not have possibly have reached the results it reached, right? Is that a fair assessment? Not entirely wrong. Okay, tell me why that's wrong. I believe the assessment is this court only decides what it's asked to decide, and it was asked to decide an infringement issue in Altair based on one claim element, retaining mechanisms. Now, under the actually litigated prong of collateral estoppel, issues decided by implication, issues inadvertently omitted, are not actually litigated. It's almost as if the parties narrowed the issues or stipulated that the Altair case on the 896 and 811 rise and fall based on one element. So, how do the new claims that you're asserting here differ from the ones that we looked at before? Most of the claims are common, but there are three claims that we did not assert in Altair. How are they different? Substantively, they're similar. There are slight differences in the claims, but in terms of what the primary frame is and what it requires, what the auxiliary frame is and what it requires... So, we may not have adjudicated on certain claims, but if those claims, if there's no difference, if the products are substantively the same, why does collateral estoppel not apply? Because, I go back to the actually litigated position, you can have a restatement of judgments, I believe, says that you can have a judgment which subsumes issues by implication or by stipulation or by inadvertence on behalf of the party. And that doesn't mean they were actually litigated for purposes of collateral estoppel. What I think the difference here is, the Zenni Court wants to provide a broad claim preclusion, saying that because the Altair Court found that certain of Altair's products were not infringing, there's a broad claim preclusion barring aspects from suing on any claims of these patents against Zenni. But that's a res judicata argument that maybe Altair might have had if the case went on... We've got the identical products and claims which are, for all intents and purposes, the same, right? And you're suggesting, I guess I'm not understanding, if you prevail in this case or don't prevail in this case on this theory you have, then you can go out and sue somebody else with the exact same product and come up with some other variation of what another claim limitation or that claim limitation might mean and try it all again a third and fourth time and there's no limit to this, is there? No, there are limits, Your Honor, but the limits are on what claim terms were actually litigated in the first case. Well, okay, the claim term litigated was retaining the... Retaining the mechanism. Okay. And that appears, let's look, I mean, all the claims are essentially the same, so can we look at claims... Okay. JA-77. Okay. So, clearly, in the first case, we concluded that a primary frame, including two retaining mechanisms, required that there be rims. Yes. And we, therefore, concluded that since the sunglasses did not have rims, there was no infringement of this provision. No, because the primary frame is the eyeglasses. That's what I'm saying. The primary frame is the eyeglasses and nobody in the first case litigated what the primary frame is, nobody litigated what the auxiliary frame is. The issue was... I'm disagreeing with what we found at first, because we couldn't have found, if we were relying on retaining mechanisms needing rims, and there, why did we reach the conclusion we did with respect to sunglasses, if sunglasses, indeed, are not a primary frame? I mean, we did it for one of two reasons, either because we thought they were a primary frame, or because the requirement, we read that the requirement of retaining mechanisms applies to auxiliary and primary frames, right? It had to have been one of those two reasons, right? Yes, Your Honor, and by way of explanation, if you go back and look at the Altair District Court Claim Construction and Summary Judgment Decisions, which are part of the appendix, the district court found that there was no infringement of the 811-896 because of the retaining mechanisms element. That's the element that was appealed. The district court said that the means plus function element requires rims. We argued on appeal, no it doesn't, we lost. That was the only issue, the only claim construction issue that was actually looked at. If Your Honor will indulge me for one moment, if we look at Claim 11 of the 896, it says the primary frame, which everybody agrees, is the eyepiece. Why didn't you make this argument in Altair? When I did the appeal, well, I wasn't the district court attorney, so I don't know, and that's the whole point of the action. Well, but this argument applied in that case. Yes, it did. And we couldn't have reached the result we reached without sort of assuming that. That argument applied in that case, and I think what we're talking about is... If the argument applied in that case, and we reached the decision we did in Altair, then why are you not collaterally a stop today? Because... And in addition to that, we're dealing with substantially the same product. You just want to call it a different name. In one case, you want to call a frame a first frame and auxiliary frame, the clip-ons, and the eyeglasses a primary frame and a second frame, and you want to show up in court again with different names. No, I don't, Your Honor. I want to call it what the courts in the Altair case and even as any court admitted these frames are. The patent says the primary frame is the eyeglasses. The patent says the auxiliary frame is the sunglasses. Nobody fights about that. Why that issue was not raised in Altair, I can't tell you because I was not the district court attorney, but that's the whole point. But how could our court have reached the conclusion it reached in the first instance if... I mean, they couldn't have said primary frames are not sunglasses, auxiliary frames are the only sunglasses, and auxiliary frames do not include the requirement for retaining mechanisms. That's completely opposite of what they concluded in that case. That's not how the case went down, unless our court thought that the retaining mechanism limitation applied equally to auxiliary or primary. It could have, but see, now we're getting into what was actually litigated and judgments by implication, and they're not the same. You say by implication, but it is correct, is it not, that without deciding that question, our court could not reach the result that it reached. Well, Your Honor, if you look at the Altair decision, there's one claim quote. It's the first frame, second frame claim, and the word retaining mechanisms is highlighted, and that's the only term that was construed. Oh, and by the way, Your Honor, in that case, in connection with a parent patent, the 054 patent, the court said that frame, the word by itself frame, means rimmed or rimless. And if we look at this claim 11 that I was asking Your Honor to focus on, when it comes to the auxiliary frame, it just says frame. It doesn't say retaining mechanisms. Why those issues were not raised in Altair in the district court, that may be a res judicata argument that Altair could have if they came out with something else later on, but it's not a collateral estoppel argument. What could have been brought or might have been brought is not collateral estoppel. It's what was actually litigated. And primary frame is not actually litigated. Auxiliary frame is not actually litigated. And the claim on its face shows that the sunglasses don't have to have rims. May I reserve? Yes, Your Honor. Let's save your rebuttal time. Let's hear from the other side. Mr. Chambers. Thank you, Your Honor. May it please the court, what aspect's position is that this court got it wrong in the Altair case? That's essentially what they're saying. Well, essentially, we had a better argument. For some reason, we didn't punt that. We didn't go forward with it. And there's nothing to preclude us from raising a new and different argument and trying it again in this case. Actually, Your Honor, they did talk about primary, secondary, first and second in their briefing in that Altair case. That's the record JA 981 through 982. But you raise a different point, which is very appropriate, which is whether after there's a judgment, you can come up with new claim construction arguments, new theories, and try it again. File a new lawsuit and re-argue the same case over again on a different basis. And that's why you have collateral estoppel. This is the Pharmacia case of this court. So you don't burden other parties or the same parties. Is that Pharmacia? Because in your brief, you say without – you don't cite a case in your brief, but the quote is, whether a plaintiff comes up with a new argument, changes a position, or asserts a different claim with the same pertinent limitation does not matter for purposes of collateral estoppel. But there's no case cited in there. Is it Pharmacia? Well, Pharmacia stated, and I'll quote this for you, that it is clear from the case law that has developed since Blondertown that an inappropriate inquiry is whether the prior finding of invalidity was incorrect. And so this court does not look at whether it was a correct decision or an incorrect decision. Well, how does that apply here? Are you saying that their new – what they're saying is under whatever theory they've got, it would have reached a different result in the first case? So it would have said that our result in the first case was incorrect? Is that the analogy? No, what the analysis is, and you never put the district court in the position, as they're asking to be done here, of trying to judge whether this court had a correct decision or not. What you do is you apply the four factors from the 11th Circuit, and this is the first mention we've had of the four factors. But this is the test, the four factors, which are, is the issue identical? Was it actually litigated, necessarily decided after a full and fair opportunity? So let's look at the first – Well, was the issue of whether or not sunglasses are an auxiliary frame or a primary frame litigated? The issue – well, let's go to the holding, and that's where you start, and this is where the district court here correctly started. What was the holding in that Altair case? And a quote from the holding, this court's holding in the Altair case. Quote, we affirm the district court's conclusion that the accused products do not infringe the asserted claims of the 811 and 896 patents because they do not use retaining mechanisms, i.e. rims or their equivalents. So you start with a holding, and so then you go in the decision to interpret what that holding means, and you look at, okay, well, what about those products didn't have the retaining mechanisms? Well, again, from the decision, quote, page 701, it was undisputed that while some of the accused glasses had rims around the primary lenses, none of the accused products had rims around the sunglass lenses. So none of them had retaining mechanisms around the sunglass lenses, so in the holding, it held that because none of the products, accused products, had rims around the sunglass lenses, that is why there was no infringement. And so we necessarily concluded that the retaining mechanism applied to the sunglasses. Exactly, Your Honor. So that's as far as the district court needs to go under – But what if they come up after the fact and they said, oh, my God, we didn't see it before, but we got a good argument that retaining mechanisms only apply exclusively to the primary frames and don't even apply to these sunglasses. It's not a great idea after it was all over. Why can't they litigate that against a different party? Well, Your Honor, they actually had a very good opportunity to litigate that in the Alcare case, and this is why this court has a protocol set up that if you don't like the opinion of the panel in this court, you have an opportunity to file a petition for rehearing, a petition for rehearing en banc, or if you're not satisfied with it, you have an opportunity to appeal to the U.S. Supreme Court. Well, except going back to the four factors, which you were just telling us about under the Eleventh Circuit, what factors – I mean, those factors don't seem to include an issue that was available for you to argue and you just chose not to. Correct, Your Honor. You don't look at whether they raised all the arguments or not or whether this court's opinion addressed all the arguments or not that could have been raised. You don't look at whether this court wrote a good opinion or whether this court wrote a bad opinion. Even if this court issued a per curiam opinion with no opinion whatsoever, you still would have a collateral, a sobble effect. In the case, you look at what the holding was, what this court's decision was, and this court's decision, as I noted, is that there was no infringement because the accused products do not have the retaining mechanism, i.e., RINs are their equivalents. And if you look at the decision, what about the accused products didn't have the retaining mechanism? This court said it was the sunglass clip-ons that didn't have the retaining mechanisms. So now you know this court's holding and what about the accused products was not infringing, and that's as far as you need to go. You don't look at what arguments they might have raised or forgot to raise or could have raised. That's all irrelevant. That's not one of the factors in the collateral, a sobble test. And the case law is very clear. If you look at the Furnace-Brook case also, in addition to the Farmacia case, it says we cannot refuse to apply collateral, a sobble because we disagree with the earlier decision. Earlier decisions of this court are binding upon later panels. So you don't look at the reasoning, whether you agree with the logic of that decision or not. You just look at the holding. The holding was a holding of non-infringement based on these RIN-less clip-ons, and then you go and you look at the other factors. Was infringement actually litigated? Definitely. Infringement was actually litigated. It was vigorously litigated. And actually, claim construction issues were litigated in that case, too. There were seven claim construction issues that aspects took up to this court and litigated. So they had an opportunity to choose some claim construction issues. If they decided to hold back some claim construction issues so they could bring a second litigation against any or other competitors in the field, well, that's their choice, and they need to live with that choice because now they have a final decision, which they haven't sought rehearing or appeal with. The other factors necessarily decided. Well, yes, infringement was necessarily decided, as was the determination. Was this issue actually litigated? That's another factor. Was this issue actually litigated? Infringement was definitely actually litigated. If you look at this court's... And the terms of this claim were litigated. The issue is infringement. Now, whether every argument that they could have raised was actually litigated is not the test. You can always raise new claim construction arguments. And look at the public policy implications of allowing them to raise new arguments. You go through this whole expensive process. You come up with a judgment. You tell the public that this eyewear is not infringing because it doesn't have the rim clip-ons. And then they come back and file another lawsuit. Well, I've come up with a new argument to try to re-argue it. And then a third lawsuit, I come up with a new argument again. So what are you telling the public and the rest of the industry? What you told the public and the rest of the industry in the Altair case, and you told it to them clearly, is that if you have magnetic eyewear that has rimless clip-ons, that that is not infringing. You told the public and the industry that. Well, it's not infringing those claims. I mean, if they had different new claims, they can come up and assert those different claims. And so the key positive effects, if the claims had a material difference, and if you look at the Furnace-Brook cases and the Hemphill cases where you have claims that do not have material differences, and this is this case also, that you can apply collateral estoppel on summary judgment. The language is either verbatim in the three claims that were not asserted, verbatim, identical, or substantively identical. There is no dispute on that point. So, again, I think the public policy implications, if you look at the Park Lane Supreme Court decision, on the whole purpose of collateral estoppel is to relieve parties of the burden of relitigating issues that have already been finally decided by this court, and also to give finality to the judgments that this court has rendered in which the public and the competitors rely upon. Okay. Thank you, Mr. Chambers. Thank you, Your Honor. Thank you, Your Honor. Thank you, Dena. I agree. Addressing the issue about us advancing new claim constructions, that's not the case. If you look at every brief that was filed, if you look at the Altair District Court Federal Circuit decision, if you look at any decision, the primary frame is eyeglasses, the auxiliary frame is sunglasses, and aspects never said anything differently. But if that litigation is on the claims, the asserted claims, and we compare it and find that there's substantially no difference between the claims, then why would not collateral estoppel apply there? Because the collateral estoppel is only on retaining mechanisms. See, what counsel just said, he said the issue was infringement. No, that's where the district court, and I think Zenni, is intermixing res judicata and collateral estoppel. Infringement is a claim. So they want to say you're barred from asserting any infringement claim against Zenni under the 811 or 896 because of the Altair case. That's a res judicata argument that they're not entitled to make. The only collateral estoppel argument they're entitled to make are the claim terms that were actually decided by this court. One we won on, the word frame, which means rimmed or rimless, retaining mechanisms we lost on. But if we look at the primary spectacle frame, the auxiliary spectacle frame claims in the patent, even Zenni would not argue that the sunglasses require rims because it doesn't say it. Even the district court would not argue that. And you know what they did? They said, well, if you read the brief, they said, well, this court could have decided that frame meant required rims also. See, the could have, would have, should have, maybe have, that's not what actually litigating means. And you couldn't have decided that, Your Honor, because in the 054, the parent patent to the other two, you decided that the word frame means rimmed or rimless. One final point on this public policy issue. The district court himself, when we quoted it in our brief, said this was a very, very tough call, to use his words. And he still had doubts about granting this motion. Now, this motion was granted on summary judgment, and the district court was obligated to resolve all reasonable inferences in our favor. He actually litigated a requirement in cases we cite, so there has to be an intent. It's intent to actually raise it, contest it, and have it decided. Conciliary frame, conciliary respectable frame were not actually litigated by that definition. So, public policy, public policy should be in favor of the patent owner in this case, because what collateral estoppel does is throw the patent owner out of court, based on issues that were never litigated in the first case, even though it might result in two different types of decisions. Thank you, Your Honor. Thank you, Mr. McGill. Your Honor, Mr. Chairman, this case is taken under tradition.